## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

**TRIAL COURT OF MASSACHUSETTS**
**SUPERIOR COURT DEPARTMENT**
DOCKET NO. 14 - 0947 D

---

**Laura Minot**
    Plaintiff,

v.

**Federal National Mortgage Association**
**And Santander f/k/a Sovereign Bank**
    Defendants.

---

### COMPLAINT AND JURY DEMAND

### I.   INTRODUCTION

This action stems from violations of the servicing guidelines of the Home Affordable

Modification Program ("HAMP") by Sovereign Bank in the review of Ms. Minot's application

for a loan modification, the wrongful foreclosure of her home on April 8, 2010, Federal National

Mortgage Association's irresponsible management of the property post foreclosure, and its

rejection of a reasonable buy-back offer by a non-profit bank whose intentions were to sell the

property back to Ms. Minot. The Plaintiff files this suit for negligence, breach of contract,

intentional infliction of emotional distress, breach of the covenant of good faith and fair dealing,

and misrepresentation related to the loan modification and foreclosure activities undertaken

against Ms. Minot. It further alleges violation of the warranty of habitability regarding the

mismanagement of the property post-foreclosure, and breach of the covenant of good faith and

fair dealing regarding the rejection of a fair market offer for purchase by a third party. Ms. Minot

seeks rescission of the foreclosure sale and a compliant review of her loan modification

application. She further seeks damages from Federal National Mortgage related to its failure to

maintain the property according to the requirements of the State Sanitary Code.

## II. PARTIES

1. Linda Minot ("the Plaintiff" or "Ms. Minot") is an individual who lives at 105 Itasca Street in Mattapan MA.

2. Defendant Santandar f/k/a Sovereign Bank (referred to herein as "Sovereign Bank") is a federal savings and loan association with its principal place of business in Texas at 8585 N. Stemmons Freeway, Suite 1100-N in Dallas.

3. Defendant Federal National Mortgage Association ("Fannie Mae") is a government-sponsored enterprise with principal offices located at 3900 Wisconsin Avenue, N.W., Washington, D.C. 20016. Fannie Mae is in the business of investing in mortgages.

## III. JURISDICTION

4. Plaintiff requests equitable relief to rescind the foreclosure sale of her home and provide her with a review of her loan modification application which complies with applicable guidelines and statutes. This court has subject matter jurisdiction over all cases where plaintiff seeks equitable relief. M.G.L. c. 214, § 1.

5. This court may exercise personal jurisdiction over a person who transacts business or has an interest in real property within the state. M.G.L. c. 223(A), § 3. This court has personal jurisdiction over Defendants because they transact business or assert an interest in property within the state.

## IV. FACTS

6. Ms. Minot moved to 105 Itasca Street as a tenant, and in 2000 gave a purchase money mortgage to Aegis Mortgage Corporation and become the homeowner.

7. On March 2, 2007, Laura Minot gave a mortgage to Sovereign Bank to refinance her home.

8.  The purpose of the refinance was home improvements, and Ms. Minot remodeled the kitchen, had the exterior and interior painted, paved the driveway, repaired the back stairs, and remodeled the basement bathroom.

9.  In early 2009 her monthly mortgage payments became difficult to manage because of unexpected costs related to family tragedies and a decline in income from her businesses, so she called Sovereign Bank to find out what options were available to lower her payments.

10. At the time Ms. Minot first called Sovereign she was not behind on her payments.

11. Ms. Minot received instructions from the bank employee she spoke with to default on her mortgage in order to qualify for a loan modification.

12. Congress passed the Emergency Economic Stabilization Act of 2008 on October 3, 2008 and amended it with the American Recovery and Reinvestment Act of 2009 on February 17, 2009 (together, the "Act"). 12 U.S.C.A. §5201 *et. seq.* (2009).

13. On February 18, 2009, pursuant to their authority under the Act, the Treasury Secretary and the Director of the Federal Housing Finance Agency announced the Making Home Affordable program ("HAMP") which created a uniform loan modification protocol funded by the federal government.

14. All servicers for loans owned or guaranteed by Fannie Mae are required to participate in HAMP.[1]

15. Ms. Minot's mortgage loan document contains a footer indicating that it is a "Massachusetts Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT." Additionally, since Fannie Mae sought to become the owner of the subject property as

---

[1] Making Home Affordable, Frequently Asked Questions (http://www.makinghomeaffordable.gov/about-mha/faqs/Pages/default.aspx)(last visited March 18, 2014).

assignee of the foreclosure sale high bid, and holds itself out as the owner of the property, a proper inference therefrom would be that Fannie Mae was the investor, or the holder of the note and all times material hereto.[2]

16. Ms. Minot spent a year and a half applying for a modification. She faxed and refaxed documents that the Bank had already received, and diligently collected all the documentation requested for the application.

17. Ms. Minot was told by bank employees not to pay her mortgage during the loan modification review period, because the missed payments would be folded into her modified loan.

18. Ms. Minot received a notice of her right to cure the default to avoid acceleration on April 21, 2009.

19. When Ms. Minot received notice that a foreclosure auction was scheduled for April 8, 2010, she escalated her inquiries to a manager at the Sovereign Bank Loss Mitigation Department named Tim Brown.

20. Tim Brown told Ms. Minot that her application would be complete so long as she filed for an extension to file her income taxes late, and then provided that request for an extension to Sovereign Bank.

21. Ms. Minot followed Mr. Brown's instructions and filed for an extension and provided a copy of the request for extension to Sovereign Bank by fax.

---

[2] Fannie Mae employs a policy of filing foreclosures in the name of the servicer. *See* Alan White, *Losing the Paper—Mortgage Assignments, Note Transfers and Consumer Protection*, 24 Loy. Consumer L. Rev. 468 (2012) ("Fannie Mae's practice was to have the bank or mortgage company servicing the loan remain the record mortgagee or mortgage assignee or use MERS as the mortgagee of record. The servicer would then transfer the property after foreclosure sale or assign its successful bid to Fannie Mae."). *See also*: Fannie Mae Servicing Guidelines at §107 301-83, https://www.fanniemae.com/content/guide/svc031412.pdf.

22. Ms. Minot received a denial of her loan modification application on March 24, 2010 citing as a reason for denial: "incomplete application".

23. On April 8, 2010, Sovereign Bank purportedly carried out a foreclosure auction of 105 Itasca Street.

24. Sovereign Bank was the high bidder at the foreclosure auction.

25. The winning bid was assigned to Fannie Mae and recorded at the Suffolk Registry of Deeds on May 21, 2010, along with a foreclosure deed.

26. On August 23, 2011, Fannie Mae signed a purchase and sale agreement with Boston Community Capital ("BCC") to sell 105 Itasca Street to the community bank, which would then sell back to Ms. Minot.

27. BCC is a non-profit community bank which

28. The agreed upon price was $130,000 and the sale was contingent on a home inspection. Ms. Minot was the intended beneficiary of this negotiation and contract for purchase.

29. When the home inspection took place however, significant structural and conditions based problems were cited, and the sale was not consummated.

30. A formal appraisal of the breadth and cost of repairs needed at 105 Itasca Street was done at the start of 2012, and BCC informed Fannie Mae about the items that needed immediate repair.

31. Specifically, BCC cited the need for lead remediation, structural problems with the porch and stairs, a rotting carport, problems with the roof, water leakage stains on the interior ceiling of the home in multiple rooms, lack of hard wired smoke detectors, structural problems with the exterior of the dining area.

32. The cost of these repairs was estimated at approximately $40,000 and BCC accordingly lowered their offer for purchase to reflect that cost.

33. Fannie Mae rejected this revised offer, in spite of the fact that it was reasonable given the documented condition of the home at the time.

34. On March 15, 2012, Fannie May purportedly served Ms. Minot with a 72 hour notice to quit.

35. On April 11, 2012 it purportedly served her with a summons and complaint for a summary process eviction action in the Boston Housing Court.

36. The summons and complaint was filed based on her failure to vacate the home after the expiration of the notice to quit, and also sought use and occupancy in the amount of $700.00 per month since the foreclosure.

37. On April 30, 2012, Ms. Minot filed and served a timely pro se Answer/Counterclaims and Request for a Jury Trial, along with Discovery Requests.

38. In her answer Ms. Minot raised the following affirmative defense and counterclaims:

    a.  Title based defenses

    b.  Discrimination on the basis of disability, specifically requesting a reasonable accommodation

    c.  An antiforfeiture defense

    d.  Significant and numerous poor conditions in the home constituting a breach of the warranty of habitability (including rodent and insect infestation, water entry and leakage, lead paint, defective locks or security problems, defective or leaky windows, defective ceilings, walls, or floors, and problems with hear and/or hot water). She noted that she informed Fannie Mae about the conditions orally and in

writing, and that some of them existed from the time Fannie Mae claimed to become the owner.

 e. Interference with quiet enjoyment related to failure to provide adequate heat and hot water, failure to pay for utilities which were the landlord's responsibility, and allowing bad conditions to exist in the home. She noted that she has been billed for utilities (electric and gas) in the absence of a written agreement requiring her to pay those utilities as required by the state sanitary code.

 f. G.L. c. 93A related to all of the unfair and/or deceptive acts stated in the Answer/Counterclaims.

39. On July 23, 2012, Fannie Mae provided the discovery responses requested by Ms. Minot.

40. On September 27, 2012, the parties requested that the court set a date for the jury trial.

41. On February 12, 2014, the Boston Housing Court sent notice to the parties that the trial would be scheduled for March 3, 2014.

42. On February 21, 2014, the Court held a pre-trial conference in which the Court found that Ms. Minot's c. 93A claim was not sufficiently pled to put Fannie Mae on Notice that it related to the loan modification activities of Sovereign Bank and would not be allowed to proceed at trial.

43. On February 24, 2014, Ms. Minot obtained counsel in the summary process eviction case.

44. On February 25, 2014, the Boston Housing Court rescheduled the jury trial due to a scheduling conflict to March 24, 2014.

45. On February 28, 2014, the Court heard the Defendant's Motion to Supplement the Pretrial Memo and decided that Ms. Minot's claims related to the failed BCC buy-back was "not the stuff of c. 93A" and struck this counterclaim from the case. Fannie Mae also

dismissed its claim for use and occupancy, and the Court indicated that it would therefore

not hear Ms. Minot's conditions based claims in the summary process case.

46. On March 19, 2014, the Court held a hearing on the Defendant's Motion to Amend the

Answer and Offer of Proof which sought to amend the 2012 answer to reflect a more

detailed pleading of the loan modification c. 93A claims. The Court denied Ms. Minot's

Motion.

## V.  CAUSES OF ACTION

### Count I: Breach of Contract
### (Sovereign Bank and Fannie Mae)

47. Ms. Minot's submission of the modification application, financial documentation, and

hardship affidavit are sufficient consideration to create a contract wherein Sovereign

Bank was obligated to review her application according to HAMP guidelines.

48. To the extent that Sovereign Bank failed to comply with HAMP guidelines in reviewing

her modification application, and carrying out the foreclosure, Sovereign Bank is in

breach of contract.[3]

49. This claim is brought against Sovereign Bank for its actions in the pre-foreclosure loan

modification review period, as well as its foreclosure activities, and also against Fannie

Mae as the assignee. *See Drakopoulos v. U.S. Bank Nat. Ass'n*, 465 Mass. 775, 777, n. 16

(2013). .

---

[3] *See, e.g.,* Frequently Asked Questions—Fannie Mae Servicing Guide Announcement, 09-05R, February 25, 2010 (stating "To ensure that a borrower currently in foreclosure or at risk of foreclosure has the opportunity to apply for a HAMP modification, servicers should not proceed with a foreclosure sale until the borrower has been evaluated for the program. Additionally, servicers are strongly encouraged not to initiate foreclosure until a borrower has been evaluated and determined to be ineligible for the program or the borrower fails to respond to a trial period plan offer that has been made by the servicer.") available at www.efanniemae.come/sf/guides/ssg/relatedservicinginfo/pdf/hampfaqs.pdf, and incorporated by reference into this Complaint.

### Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing
#### (Sovereign Bank and Fannie Mae)

50. Plaintiff repeats, realleges, and incorporates by reference paragraphs 46 through 48 above.

51. The Defendant Sovereign Bank is obligated by contract and common law to act in good faith and deal fairly with each borrower.

52. "[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance. *Uno Restaurants, Inc., v Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).

53. The Defendant Sovereign Bank has breached this duty by: failing to perform loan servicing functions consistent with its responsibilities to the Plaintiff, routinely demanding information it already received from the Plaintiff, providing the Plaintiff with inaccurate information about the status of her modification application, and the Defendant proceeded with the scheduled foreclosure without reviewing her in a compliant manner.[4]

54. Fannie Mae breached the covenant of good faith and fair dealing when it rejected a reasonable offer for purchase by a third party non-profit bank prepared to sell the property back to Ms. Minot.

---

[4] *See e.g.* Frequently Asked Questions—Fannie Mae Servicing Guide Announcement, 09-05R, February 25, 2010 "Q1702. Is the borrower eligible for HAMP if he or she is not a current tax filer?
Yes. Only the borrower's most recent tax return needs to be obtained. If the tax return for the most recent tax year is not available, the servicer must process the borrower's signed Form 4506-T to confirm that the borrower did not file a tax return for that year." *See also*, Fannie Mae Servicing Guide, Announcement 09-05 R, April 21, 2009: "A borrower who is current, contacts the servicer for a modification, appears potentially eligible for a modification, and has suffered an eligible hardship (as described above) must be evaluated using the imminent default screen set forth below."

55. As a direct and proximate result of these failures to act in good faith and the absence of fair dealing, Defendants caused Plaintiff harm, including but not limited to causing her to lose title to her home, and prohibiting her from consummating a viable buy-back of the property after foreclosure.

56. This claim is brought against Sovereign Bank for its actions in the pre-foreclosure loan modification review period, as well as its foreclosure activities, and also against Fannie Mae as the assignee. *See Drakopoulos* at 777.

57. This claim is also brought against Fannie Mae for its rejection of a reasonable buy-back offer made by BCC.

**Count III: Promissory Estoppel**
**(Sovereign Bank and Fannie Mae)**

58. Plaintiff repeats, realleges, and incorporates by reference paragraphs 46 through 56 above.

59. Defendant Sovereign Bank, by way of the instructions given to the Plaintiff to cease making mortgage payments to become eligible for a loan modification, and further not to make payments during the review period, made a representation to the Plaintiff that she would receive assistance with her mortgage if she followed the instructions.[5]

60. These instructions were intended to induce the Plaintiff to rely.

61. The Plaintiff did indeed rely on the Defendant's representation by stopping her mortgage payments and applying for a loan modification.

62. This reliance was reasonable given that the instructions came from the Loss Mitigation department.

---

[5] *Id.*

63. The Plaintiff's reliance was to her detriment. She has not received a loan modification and instead her home has been foreclosed, and she is facing imminent eviction by Fannie Mae.

64. This claim is brought against Sovereign Bank for the actions it took to induce detrimental reliance, and also against Fannie Mae as the assignee. *See Drakopoulos* at 777, n. 16.

## Count IV: Misrepresentation
### (Sovereign Bank and Fannie Mae)

65. Plaintiff repeats, realleges, and incorporates by reference paragraphs 46 through 63 above.

66. Defendant is liable to Plaintiff for intentional or negligent misrepresentation in its handling of her loan modification application, and instructions given related to the forms needed to complete her application—specifically those related to her failure to file taxes.

67. Based on Defendant's unlawful conduct, Plaintiff is entitled to recover actual, consequential, statutory and punitive damages, costs and attorney's fees.

68. This claim is brought against Sovereign Bank for its misrepresentation, and also against Fannie Mae as the assignee. *See Drakopoulos* at 777.

## Count V: Negligence
### (Sovereign Bank and Fannie Mae)

69. Plaintiff repeats, realleges, and incorporates by reference paragraphs 46 through 67 above.

70. The HAMP guidelines are, as a matter of law, the industry standard for the residential mortgage servicing industry.[6]

---

[6] "Standard Industry Practice—The qualified loss mitigation plan guidelines [i.e., HAMP] issued by the Secretary of the Treasury under the Emergency Economic Stabilization Act of 2008 shall constitute standard industry practice for purposes of all Federal and State laws." Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22 (2009), §201. (Emphasis added).

71. The above section creates a duty on the part of mortgage servicers, investors, and their agents have a duty to follow HAMP guidelines.

72. Under HAMP guidelines servicers should not advise borrowers to default in order to become eligible.[7]

73. Under HAMP guidelines a foreclosure must be cancelled if a homeowner has applied for a HAMP loan modification. [8]

74. Sovereign Bank had a duty to follow HAMP servicing guidelines in evaluating her application.

75. Sovereign Bank disregarded its duty, improperly denied the application, and foreclosed on Ms. Minot before she had a chance to appeal her denial or request reconsideration.

76. As a direct and proximate result of the negligence, Sovereign Bank caused damage to Ms. Minot, including but not limited to causing her to lose title to her home.

77. This claim is brought against Sovereign Bank for the negligent actions or inactions it took in handling Ms. Minot's loan modification application, and also against Fannie Mae as the assignee. *See Drakopoulos* at 777, n. 16 (2013).

## Count VI: Intentional Infliction of Emotional Distress
### (Sovereign Bank and Fannie Mae)

78. Plaintiff repeats, realleges, and incorporates by reference paragraphs 46 through 76 above.

79. Defendants are liable to Plaintiff for intentional infliction of emotional distress.

---

[7] *See also*, Fannie Mae Servicing Guide, Announcement 09-05 R, April 21, 2009: "A borrower who is current, contacts the servicer for a modification, appears potentially eligible for a modification, and has suffered an eligible hardship (as described above) must be evaluated using the imminent default screen set forth below."

[8] *Id.* ("Foreclosure actions...including initiation of new foreclosure actions, must be postponed for all borrowers that meet the minimum HAMP eligibility criteria.")

80. The Defendants' acts and omissions, as set forth above, are shocking to the conscience of the community.  The Plaintiff was subjected to emotional distress because of Fannie Mae's persistent failure to maintain the Premises in accordance with the State Sanitary Code.  The Plaintiff was also subjected to emotional distress because Sovereign Bank's noncompliant loan modification review, and unlawful foreclosure of her home.

81. The Defendants knew or should have known that these actions would cause the Plaintiff to suffer emotional distress.

82. Based on Defendants unlawful conduct, Plaintiff is entitled to recover actual, consequential, statutory and punitive damages, costs and attorney's fees.

## Count VII: Violation of the Warranty of Habitability and Covenant of Quiet Enjoyment
### (Fannie Mae)

83. Plaintiff repeats, realleges, and incorporates by reference paragraphs 46 through 81 above.

84. Fannie Mae had a non-waivable duty to maintain the Premises in compliance with the State Sanitary Code.[9]  Specifically, the Defendant was on notice of lead paint at the property, structural problems with the porch and stairs, a rotting carport, problems with the roof, water leakage stains on the interior ceiling of the home in multiple rooms, lack of hard wired smoke detectors, structural problems with the exterior of the dining area.

85. Fannie Mae was put on notice of these conditions by BCC in the summer of 2011 and no remediation initiated by Fannie Mae has taken place to date.

86. As a result of the unremediated presence of lead in the home, Ms. Minot's granddaughter and her mother were forced to leave the home and move into shelter.

---

[9] The Sanitary Code requires "owners" to provide a dwelling fit for human habitation by "occupants"—no landlord-tenant relationship is required for this duty to attach.  105 CMR 410.020.

87. Furthermore, the Defendant was obligated to furnish utilities at the Premises post-foreclosure in the absence of a written agreement otherwise. There was no written agreement assigning this duty to the Plaintiff and therefore she is entitled to the actual damages stemming from Fannie Mae's failure to provide utilities (i.e. the amounts accrued on both her gas bill and her electric bill).

88. As a result of Defendant's breach of warranty, Plaintiff suffered damages in the amount of the difference between the fair market value of the Premises in good repair and in compliance with all applicable laws and regulations and the value of those Premises in disrepair, and any damages to Plaintiff that are the consequences of Fannie Mae's breach of warranty.

## PLAINTIFF DEMANDS TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

The Plaintiff demands a trial by jury on all issues so triable.

WHEREFORE, Plaintiff Laura Minot respectfully requests the following relief:

(i)     determine that Defendant is liable to Plaintiff upon Plaintiff's claims, and award actual, consequential, statutory and punitive damages as determined by the jury or as the Court may deem appropriate;

(ii)     rescind the foreclosure and require a compliant review of Ms. Minot's loan modification application;

(iii)     award costs and attorney's fees; and

(iv)     grant such other and further relief as merited in the interests of justice.

Respectfully submitted,
Laura Minot
By her Attorney

Julia Devanthéry
Legal Services Center of Harvard Law
School
122 Boylston Street
Jamaica Plain, MA 02130
617-390-2566
BBO#: 677029

| **CIVIL ACTION COVER SHEET** | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT | DOCKET NO. 14 0947 |
|---|---|---|
| | COUNTY OF | SUFFOLK |

| **PLAINTIFF(S)** Laura Minot | **DEFENDANT(S)** Santandar f/k/a Sovereign Bank and Federal National Mortgage Association |
|---|---|

| Type Plaintiff's Attorney name, Address, City/State/Zip Phone Number and BBO# | Type Defendant's Attorney Name, Address, City/State/Zip Phone Number (If Known) |
|---|---|
| Julia Devanthery<br>Legal Services Center of Harvard Law School<br>122 Boylston Street<br>Jamaica Plain, MA 02130<br>677029 | |

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|

**D99 Other Equitable Remedies (specify) - Fast Track**
Plaintiff seeks recission of her foreclosure, review of her loan modification application, and damages.

IS THIS A JURY CASE? [•] Yes [ ] No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
1. Total hospital expenses                                        $_____
2. Total doctor expenses                                         $_____
3. Total chiropractic expenses                                   $_____
4. Total physical therapy expenses                               $_____
5. Total other expenses (describe)                               $_____
B.  Documented lost wages and compensation to date    Subtotal  $_____
C.  Documented property damages to date                          $_____
D.  Reasonably anticipated future medical expenses               $_____
E.  Reasonably anticipated lost wages and compensation to date   $_____
F.  Other documented items of damages (describe)                 $_____

G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)  $_____
Plaintiff seeks damages for negligence and misrepresentation in the
loan modification application process, intentional infliction of
emotional distress, warranty of habitability and breach of the covenant  **Total $** $75,000
of quiet enjoyment related to the property management post-foreclosure.

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)
Provide a detailed description of claim(s):

Breach of contact, promissory estoppel, and violation of the covenant of good faith and fair
dealing based on loan modification and foreclosure activities and violation of the covenant of
good faith and fair dealing regarding the rejection of a reasonable offer for purchase

**TOTAL** $50,000

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."
Signature of Attorney of Record _____ ,Date: 3/21/14
A.O.S.C. 3-2007